UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| PAUL T. AQUINO,         Plaintiff |
| --- |
| VS. |
| PACESETTER ADJUSTMENT COMPANY, et al          Defendant |

CIVIL ACTION NO. 03-40285-FDS

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**I.   INTRODUCTION.**

Now comes the plaintiff, Paul T. Aquino, (Mr. Aquino) and hereby submits his Memorandum of Law in Opposition to the Motion for Summary Judgment of Pacesetter Adjustment Company (Pacesetter) and Ace Fire Underwriters Insurance Company (Ace).

**II.   FACTUAL BACKGROUND.**

On July 12, 2000 Mr. Aquino was involved in a motor vehicle accident with another vehicle owned by March Taxi, Inc. and operated by Eric Coleman. [Statement of Facts ("SOF") 1]. March Taxi, Inc. was insured by Ace. [Defendants' SOF 1]. Ace retained Pacesetter to handle Aquino's claim and Pacesetter retained Attorney Gerard Laurence to represent the Ace insureds. [Defendants' SOF 3 and 4].

Mr. Aquino was represented by John F. Keenan, Jr., Esq. (Mr. Keenan). [SOF 2]. By letters dated July 14, 2000, August 11, 2000, October 19, 2000 and November 29, 2000, Mr. Keenan's requested coverage disclosures pursuant to Massachusetts statute M.G.L. c. 175, §112C. [SOF 3, 4, 6 and 7]. By letter dated September 15, 2000 Pacesetter informed Mr. Keenan that they would provide

Mr. Keenan with a copy of the insured's declarations page. [SOF 5]. Finally, on December 11, 2000, Pacesetter sought coverage confirmation from Stone Insurance (March Taxi's agent). [SOF 8]. By letter dated December 20, 2000 Pacesetter documented a conversation with Mr. Keenan dated December 13, 2000 wherein Pacesetter advised Mr. Keenan that March Taxi's policy had combined single liability limits of $100,000.00 and that there was also an excess policy with another carrier. [SOF 9]. Pacesetter did not forward to Mr. Keenan a copy of the declarations page as had been promised in September. [SOF 5, Exhibit 4].

In January 2002, Mr. Keenan filed a complaint on behalf of Mr. Aquino in the East Brookfield District Court. [SOF 11]. Also in January 2002, Mr. Keenan prepared and served a Request for Production of Documents on the defendants. [SOF 11]. Paragraph 1 of the Request asked for "Copies of the coverage selections pages of all insurance agreements under which any person carrying on an insurance business may be liable to satisfy part or all of the judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment, including so-called umbrella and excess policies." [SOF 11 and Exhibit 12].

In September 2002, in order to respond to plaintiff's Request for Production of Documents, Attorney Laurence's office corresponded with Pacesetter asking for copies of the requested declarations pages. [SOF 14, 15]. On September 20, 2002 Pacesetter forwarded to Attorney Laurence's office the declarations page of the Ace policy and other documents relating to the Ace policy. [SOF 18]. Nothing was forwarded concerning any excess or umbrella policy. [SOF 16, 18]. The declarations page that Pacesetter sent to Attorney Laurence's office showed Optional Bodily Injury coverage of $100,000

combined single limit. [SOF 18, Exhibit 18]. Attorney Laurence's office produced the documents that Pacesetter had provided in the Response to Plaintiff's Request for Production of Documents. [SOF 48]. Nothing was produced with reference to any excess insurance and Attorney Laurence was totally unaware of any excess insurance. [SOF 48].

Mr. Aquino's claim against March Taxi, Inc. and Eric Coleman ultimately was tried in East Brookfield District Court before Judge Charles Abdella. [SOF 19]. After trial Judge Abdella wrote Findings, Rulings and Judgment dated February 20, 2003. [SOF 19, Exhibit 20]. On February 21, 2003 Judgment entered in the sum of $161,125.00. [SOF 20]. With interest and costs, the judgment totaled $182,709.66 [SOF 20].

By letter dated March 12, 2003, Attorney Laurence informed Pacesetter's president, Paul E. Pearson, (Mr. Pearson) of the judgment. [SOF 21]. At that time Attorney Laurence still thought that the only available coverage was Ace's $100,000.00 policy. [SOF 21, Exhibit 22].

Later on March 12, 2003, Mr. Keenan faxed Attorney Laurence a copy of Pacesetter's December 20, 2000 letter which had indicated the existence of excess coverage and on March 13, 2003 Mr. Laurence forwarded a copy of Pacesetter's December 20, 2000 letter to Mr. Pearson and asked Pacesetter to advise whether excess coverage was available. [SOF 22]. By another letter dated March 13, 2003 Attorney Laurence informed Pacesetter that in his opinion there was no appealable issue. [SOF 23]. Attorney Laurence reiterated that the had no prior knowledge of excess coverage. [SOF 23].

By letter dated March 21, 2003, Mr. Pearson informed Mr. Laurence that, "<u>It will now be necessary that we notify the Excess Carrier of this unbelievable judgment.</u>" (emphasis added). [SOF 24]. On March 26, 2003, Mr. Pearson wrote Mr. Keenan stating, "We have a $100,000 CSL limit of coverage provided to the named insured, March Taxi. We previously paid property damage to your client totaling $4,144.48. We have $95,855.52 remaining on the policy limit which we offer in full and final settlement of all claims." [SOF 25]. Mr. Pearson's letter failed to acknowledge the availability of excess coverage and asserted that only $95,855.52 remained on the Ace policy despite the fact that the Ace declarations page clearly showed separate coverages for optional bodily injury and for property damage. [SOF 25]. In conversation with Mr. Keenan on March 27, 2003, Mr. Pearson told Mr. Keenan that it was unlikely a cab company would have excess coverage. [SOF 26].

On April 9, 2003 Mr. Pearson again asserted that only $95,855.52 remained on the Ace policy limit and again offered that amount in partial satisfaction of the judgment. [SOF 31]. On April 21, 2003 Mr. Pearson again asserted that Ace's policy was single limit liability policy with no separate coverage for property damage liability and also asserted that Pacesetter had "<u>again checked the coverage</u>" to determine this. (emphasis added). [SOF 35].

On May 5, 2003 Pacesetter actually did request verification of the compulsory and/or optional coverages. [SOF 37]. By letter dated May 6, 2003 to the excess carrier Pacesetter confirmed that Pacesetter was issuing payment of $100,000.00. [SOF 39]. By letter dated May 9, 2003 Pacesetter transmitted a settlement check in the amount of $100,000.00 as part of an overall settlement of $170,000.00. [SOF 40-43].

### III. ARGUMENT.

#### A. The Defendant Pacesetter Made Misrepresentations In Violation Of M.G.L. Chapter 176D and M.G.L. Chapter 93A.

Under Massachusetts General Laws Chapter 176D, Section 3(9)(a), the misrepresentation of pertinent facts or insurance policy provisions relating to coverage at issue is declared to be an unfair claim settlement practice. Chapter 176D, Section 3, defines unfair claim settlement practices as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance. Massachusetts General Laws, Chapter 93A, Section 2(a), declares that "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." M.G.L. Chapter 93A, Section 9(1) declares that "Any person... who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two or any rule or regulation issued thereunder or any person whose rights are affected by another person violating the provisions of clause (9) of section three of chapter one hundred and seventy-six D may bring an action... by way of original complaint... for damages..."

In the underlying action of <u>Aquino v. March Taxi, Inc. and Eric Coleman</u>, Ace Fire Underwriters Insurance Company (Ace) provided primary coverage to March Taxi, Inc. The Ace policy provided optional bodily injury coverage of $100,000 combined single limits. Under separate coverage the Ace policy provided $100,000 combined single limit coverage for property damage (compulsory limit $5,000). In addition to the Ace policy, March Taxi, Inc. also had an excess policy with General Star Insurance Company.

On February 21, 2003 after a trial in the East Brookfield District Court, Mr. Aquino obtained judgment against March Taxi, Inc. and Eric Coleman in the amount of $161,125.00. With the addition of pre-judgment interest and costs, the total amount of the judgment is $182,709.66. As soon as the Judgment entered the amount of primary coverage available under the Ace policy and the existence and amount of the excess coverage became vitally important not only to Mr. Aquino but to March Taxi, Inc. and Eric Coleman as well.

By the time Judgment entered Pacesetter and Ace had established a track record concerning disclosure of "pertinent facts or insurance policy provisions relating to coverage at issue" which could generously be characterized as lax. As far back as the year 2000, Mr. Aquino's lawyer had to write four letters requesting disclosure of coverages over a four and half month period before he was able to elicit a disclosure. When a disclosure was finally made more than five months after the original request, it failed to include copies of the insured's declarations page(s) as had been promised three months before. When coverage disclosure was made in December 2000, Mr. Aquino's lawyer suggested that Pacesetter notify an unidentified excess carrier of the claim. Pacesetter failed to do so.

In January 2002, Mr. Aquino's claim against March Taxi, Inc. and Eric Coleman was put into suit. Almost immediately a Request for Production of Documents was served on the defendants. The Request for Production included a request for copies of coverage selections pages of all applicable insurance agreements, including umbrella and excess policies.

On March 22, 2002, Pacesetter hired Attorney Laurence to represent March Taxi, Inc. and Eric Coleman. Pacesetter did not inform Attorney Laurence that there was any excess coverage available to March Taxi, Inc. and Eric Coleman. In September 2002 when Attorney Laurence's office asked for Pacesetter to provide a copy of the policy declaration page, Pacesetter forwarded a copy of the Ace declaration page but nothing on the excess policy about which Attorney Laurence remained in the dark. As a result, Attorney Laurence produced only one coverage selections page reflecting only $100,000.00 in coverage.

Pacesetter and Ace argue that the document production response was made by Attorney Laurence not by Pacesetter and that Attorney Laurence was not an agent of Pacesetter. Pacesetter relies on Herbert A. Sullivan, Inc. vs. Utica Mutual Insurance Company, 439 Mass. 387, 406 (2003).

In the Herbert A. Sullivan, Inc. case, the question was whether the attorneys' representation of Utica Mutual's insured was controlled by Utica Mutual and whether therefore Utica Mutual was rendered responsible for the attorney's negligence. Utica Mutual argued that, as a matter of law, defense counsel is an independent contractor with separate and distinct obligations to its client, the insured, and as such, any alleged negligence by the attorney did not subject Utica Mutual to vicarious liability. The Supreme Judicial Court agreed with Utica Mutual's analysis.

The issue here is totally different form the issue in the Herbert A. Sullivan, Inc. case. Mr. Aquino is not asserting that Attorney Laurence was negligent. Both in the document response of September 20, 2002 and in Attorney Laurence's letter of

March 12, 2003 to Mr. Keenan, Attorney Laurence was simply providing pertinent facts or insurance policy provisions relating to coverage at issue based on the incomplete and inadequate information provided to him by Pacesetter. The representations were Pacesetter's communicated to Mr. Aquino through Attorney Laurence. Pacesetter cannot insulate itself from the misrepresentations by saying the information it was providing was communicated through its hired attorney rather than from itself directly.

There really can be no factual issue here that (1) the failure to produce the applicable coverage selection pages on September 20, 2002; (2) Attorney Laurence's statement on March 12, 2003 that the coverage was $100,000.00; (3 and 4) Mr. Pearson's March 26, 2003 and April 2, 2003 representations that there was only $95,855.25 balance remaining from Ace's $100,000.00 optional bodily injury coverage; and (5) Mr. Pearson's April 21, 2003 representation that there was no separate coverage for property damages liability were all "misrepresentation(s) of pertinent facts or insurance policy provisions relating to coverage at issue." Pacesetter and Ace attempt to brush these misrepresentations aside as "nothing more than Pacesetter's interpretations of the March Taxi, Inc. insurance policy limit" and its interpretation of the insurance policy limit was "plausible."

Under the law of the Commonwealth, a successful G.L. Chapter 93A action based on deceptive acts or practices doe not require proof that a plaintiff relied on the representation or that the defendant intended to deceive the plaintiff or even knowledge on the part of the defendant that the representation was false. Aspinall v. Philip Morris Companies, Inc., 442 Mass. 381, 394 (2004) and cases cited. Conduct is said to be deceptive if it possesses a tendency to deceive. id, p. 394. In determining whether an act

or practice is deceptive regard must be had, not to fine spun distinctions and arguments that may be made in excuse, but to the effect which the act of practice might reasonably be expected to have upon the general public. id, p. 394.

A representation may consist of a half truth, or even may be true as a literal matter, but still create an overall misleading impression through failure to disclose material information. id, p. 395.

Pacesetter's and Ace's arguments on the issue of misrepresentation ignore the principle that negligent misrepresentation of fact, the truth of which is reasonably capable of ascertainment, is an unfair and deceptive act or practice within the meaning of M.G.L. Chapter 93A, Section 2(a), so as to create liability for negligent misrepresentation. Glickman v. Brown, 21 Mass. App. Ct. 229, 486 N.E. 2d 737 (1985) review denied, 396 Mass. 1106, 488 N.E. 2d 1179. Nothing could have been more simple to confirm that the fact that the Ace policy contained separate coverages for optional bodily injury and property damage. Pacesetter needed only to seek clarification from Ace. Instead, Pacesetter asserted not only on March 26, 2003, but again on April 9, 2003 and April 21, 2003, that only $95,855.32 remained on Ace's policy. To make matters worse, in Pacesetter's April 21, 2003 letter, Pacesetter asserted that it had "again checked" the coverage and that there was no separate coverage for property damage liability.

Pacesetter's file indicates that clarification of the coverage issue was only sought by Pacesetter on May 5, 2003, after which $100,000.00 was paid to Aquino under Ace's optional bodily injury to others coverage.

Pacesetter suggests that all this was just a series of innocent misinterpretations of coverage as supported by Mr. Pearson's affidavit. To begin with, where a party's motive

or state of mind is at issue, summary judgment is rarely appropriate. Mulford v. Mangano, 626 N.E. 2d 622, 35 Mass. App. Ct. 800 (1994) review granted 631 N.E. 2d 57, 417 Mass. 1102, affirmed 636 N.E. 2d 272, 418 Mass. 407. Vittands v. Sudduth, 730 N.E. 2d 325, 49 Mass. App. Ct. 401 (2000). Quincy Mutual Fire Ins. Co. v. Abernathy, 469 N.E. 2d 797, 393 Mass. 81 (1984). Moreover, the Pacesetter file belies Pacesetter's protestations of innocence.

A fair reading of the file shows that despite Mr. Aquino's attorney's suggestion in December 2000 that Pacesetter notify the excess carrier of the Aquino claim, Pacesetter never did so prior to the entry of judgment. Upon learning of the judgment, Pacesetter informed Attorney Laurence on March 13, 2003 that "It will now be necessary that we notify the Excess Carrier of this unbelievable judgment."

There is no evidence in Pacesetter's file that Pacesetter notified the Excess Carrier of the judgment until April 3, 2003. Pacesetter's president, Mr. Pearson, had to be well aware during the balance of March that, when notified of the Judgment, the Excess Carrier might well assert a late notice defense. On March 26, 2003 Mr. Pearson wrote a letter to Mr. Aquino's attorney in which he seeks to settle all of Mr. Aquino's claims for $95,855.82, making no reference to the existence of excess coverage. The next day, Mr. Pearson told Mr. Keenan that it was unlikely that a cab company would have excess coverage when he knew full well (or certainly appeared to know full well) that March Taxi, Inc. in fact had excess coverage.

Despite Mr. Pearson's protestations to the contrary, none of this seems to pass even a slight smell test.

Pacesetter and Ace put much emphasis in their arguments on the case of Panzarella v. Travelers Insurance., 2002 Mass Super. Lexis 160 (2002) a Superior Court decision. In Panzarella, the non-disclosures and/or mis-disclosures concerning coverage were corrected before trial and judgment. Where there was an issue of non-disclosure based on a fact available in the file or readily ascertainable, similar to the issue here on coverages, the court found a violation of Chapter 93A and awarded multiple damages.

There is an actionable violation of M.G.L. Chapter 176D, §3(9)(a) and of Chapter 93A on the facts disclosed here.

**B.    The Pacesetter And Ace Arguments For Summary Judgment Based On Aquino Having Suffered No Injury As A Result Of Defendants' Unlawful Conduct Lacks Merit.**

The defendants' argument that the plaintiff has suffered no injury as a result of the defendants' misrepresentations and is, therefore, barred from recovery under Chapter 93A is supported neither by the language of Chapter 93A nor by the case law interpreting Chapter 93A. The defendants reliance on Lord v. Commercial Union Insurance Company, 60 Mass. App. Ct. 309, 321 (2004) is misplaced, given the subsequent case of Aspinall, et al v. Philip Morris Companies, Inc., 442 Mass. 381 (2004) which discusses Lord at length.

Before discussing the limiting effect of Aspinall on Lord, it should be noted that even the Appeals Court expressed doubt about its result in Lord: "While the matter is not free from doubt, we believe that the judge misconstrued the provisions of G.L. c. 93A, Section 9(3)..." Lord, supra, p. 318. It should also be noted that the language in G.L. Chapter 93A, Section 9(1) relied upon the Appeals Court in Lord, is in the disjunctive: "Any person... who has been injured by another persons' use or employment of any

method, act or practice declared to the unlawful by section two or any rule or regulation issued thereunder <u>or</u> any person whose rights are affected by another person violating the provisions of clause (9) of section three of chapter one hundred and seventy-six D may bring an action..." (emphasis added).

Given <u>Aspinall</u>, supra, the question is whether Mr. Aquino was injured as that term is defined in <u>Aspinall</u> and, therefore, whether he is a person whose rights were affected by Pacesetter's or Ace's violation of M.G.L. Chapter 176D, Section 3(9).

The court in <u>Aspinall</u> said "As this court held in <u>Leardi v. Brown</u>, 394 Mass. 151, 160 (1985), G.L. c. 93A 'create[s] a legal right, the invasion of which, without more, constitutes an injury' and 'under circumstances where there has been an invasion of a legally protected interest, but no harm for which actual damages can be awarded...' the statute provides for the recovery of minimum damages in the amount of [twenty-five dollars]." <u>Aspinall</u>, <u>supra</u>, p. 401.

In <u>Leardi v. Brown</u>, 394 Mass. 151 (1985) the issue was whether a group of tenants had been injured within the meaning of G.L. c. 93A by use of deceptive and illegal clauses in the defendants' standard apartment lease, despite the fact that the plaintiffs were unaware of, and the defendants had never attempted to enforce, the illegal provisions. It was clear in <u>Leardi</u> that none of the plaintiffs had sustained any monetary loss as the result of illegal provisions. In finding that the defendants had violated M.G.L. c. 93A and that the plaintiffs were entitled to statutory damages, the court said "Moreover, '[t]he most usual form of injury is the infliction of some harm; but there may be injury although no harm is done.' Restatement (Second) of Torts §7 comment a (1965). As Professor McCormick has explained, 'What the law always requires as a basis

for a judgment for damages is not loss or damage, but 'injuria,' and hence damages are allowed, though there has been no loss or damage.' (citations omitted)."

In Leardi the violation of Chapter 93A was a landlord's efforts to mislead tenants by deceptive use of language in a lease. In Aspinall the violation of Chapter 93A was a cigarette company's deceptive advertising. In our case the violation of Chapter 93A is the misrepresentation of pertinent facts or insurance policy provisions relating to coverages at issue. It was held by the court in Aspinall that the violations in Leardi and Aspinall, if proven, effected a per se injury. Aspinall, supra, p. 402. All members of the class would be entitled to statutory damages even if some class members were unable to prove any actual damages. id p. 402. The same principle attends here.

After Aspinall, all that is left of Lord is the principle that causation is a required element of a successful G.L. c. 93A action. Our facts and the Lord facts differ entirely on causation. In Lord, the failure to send a timely suspension notice was not the reason for the plaintiff's failure to have his vehicle inspected within seven days and was not the cause of his injury. Here the defendants misrepresented coverages both before and after judgment entered. But for the diligence and persistence of his lawyer, the defendants' violations of M.G.L. c. 93A and Section 176D 3(9)(a) would have cost Mr. Aquino $74,144.48.

Based on the evidence in Pacesetter's file it appears that the defendants' violations of M.G.L. Chapter 93A were willful and knowing. Pursuant to M.G.L. Chapter 93A, Section 9(3) since no reasonable relief was tendered, "if the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the

use or employment of the act or practice was a willful or knowing violation of aid section two or that the refusal to grant relief upon demand was made in bad faith with knowledge or reasons to know that the act or practice complained of violated said section two. For the purposes of this chapter, the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence..."

Here Mr. Aquino's actual damages are established by statute at $161,125.00.

The arguments of Pacesetter and Ace lack merit.

## CONCLUSION

For the foregoing reasons, the plaintiff, Paul T. Aquino, respectfully requests this Honorable Court to deny defendants' motions for summary judgment.

Respectfully submitted,
Plaintiff, by his attorney:

_____
Douglas Q. Meystre, Esquire
BBO #344740
Fletcher, Tilton & Whipple, P.C.
370 Main Street
Worcester, Massachusetts 01608
508-798-8621

## CERTIFICATE OF SERVICE

I, Douglas Q. Meystre, Esquire, hereby certify that on **April 13, 2005**, I served the foregoing upon the defendants by mailing a copy, first class mail, postage prepaid, to:

Maynard M. Kirpalani, Esq.
Wilson, Elser, Moskowitz,
    Edelman & Dicker, LLP
155 Federal St.
Boston, MA 02110

John F. Keenan, Esq.
Wolfson, Keenan, Cotton & Meagher
390 Main St., Suite 1000
Worcester, MA 01608

_____
Douglas Q. Meystre